UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOELLE OJEDA, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>HAIN CELESTIAL GROUP, INC.,<br><br>     Defendant. | Case No.  2:21-cv-2983<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Noelle Ojeda ("Ms. Ojeda" or Plaintiff") on behalf of herself and the Class and Subclass of all others similarly situated defined below, brings this complaint against defendant Hain Celestial Group, Inc. ("Defendant" or "Hain") for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals or other ingredients that do not conform to the labels, packaging, or advertising of, or statements concerning, Defendant Hain's products sold throughout the United States, including in this District. Plaintiff seeks both injunctive relief and damages on behalf of the proposed Class and Subclass (as defined below) and alleges the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief. Given the concealed nature of Defendant Hain's conduct, Plaintiff believes that an opportunity to conduct discovery will reveal further support for Plaintiff's allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of herself and a proposed class of individuals that bought baby food sold by Hain that was, unbeknownst to Plaintiff and members of the Class and Subclass (but known to Hain), tainted with numerous toxic heavy metals.[1] Plaintiff and

---

[1] The products at issue are all baby foods sold by Hain under the Earth's Best Organic label that contain one

members of the Class and Subclass seek injunctive and monetary relief based on Hain's false, deceptive, and misleading business practices in violation of the consumer protection statutes of the home state of Plaintiff and members of the Class and Subclass.

2.     Parents and other caregivers, including Plaintiff and members of the Class and Subclass, reasonably believe that the baby food they purchase for their babies will be healthy, nutritious, and non-toxic.  Alarmingly, they were wrong.  On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House Subcommittee") released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[2] (the "Report").  According to the Report, several brands of baby food sold in the United States, including those sold by Defendant Hain, contain unsafe levels of toxic heavy metals including metals such as arsenic, lead, and cadmium.

3.     Given the health risks associated with high levels of toxic heavy metals, the presence of these substances in baby food is a material fact to consumers.  Indeed, consumers, such as Plaintiff and members of the Class and Subclass (defined below), are unwilling to purchase baby food that contains unsafe levels of toxic heavy metals.

4.     Baby food manufacturers hold a special position of public trust; consumers believe that they would not sell products that are unsafe.  Defendant Hain knew that the presence of toxic

---

or more of the following ingredients: organic barley flour, organic chopped broccoli, organic date paste, organic cinnamon powder, organic brown flax milled, organic yellow papaya puree, organic whole wheat fine flour, organic red lentils, organic oat flakes, organic oat flour; organic vitamin pre-mix, organic brown rice flour, organic whole raisins, organic soft white wheat flour, organic spelt flour, organic barley malt extract, organic yellow split pea powder, medium grain whole rice, organic butternut squash puree, and organic blueberry puree, and include, Stage 1: Baby Chicken & Chicken Broth, Stage 2: Sweet Potato and Chicken Dinner; Stage 2: Chicken & Rice (the "Products").  Discovery may reveal additional products at issue.

[2]     *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report (the "Report"), SUBCOMMITTEE ON ECONOMIC AND CONSUMER POLICY OF THE COMMITTEE ON OVERSIGHT AND REFORM, at 2, Feb. 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed May 25, 2021).

heavy metals in their baby food was a material fact to consumers, yet omitted and concealed the unsafe level of heavy metals from consumers.  To this day, Defendant Hain's Earth's Best Organic baby foods containing dangerous levels of toxic heavy metals bear no label or warning to parents.

5.      Accordingly, Plaintiff brings this suit on behalf of herself and a Class of similarly situated individuals for damages resulting from Defendant's sale of baby food that contained unsafe levels of toxic heavy metals.

**PARTIES**

6.      Plaintiff Noelle Ojeda is a citizen of the State of California and is a member of the Class defined herein.  She purchased Hain's baby foods, including Earth's Best Organic 6+ months (Stage 2) Butternut Squash Pear Baby Food Puree and Earth's Best Organic Sensitivity—DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, primarily from Target and Amazon from around July 2020 to January 2021, until she became concerned about the presence of heavy metals in February 2021.

7.      Prior to purchasing the Products, Plaintiff Ojeda saw Defendant's nutritional claims on the packaging, including "Earth's Best," "organic" and "nurturing baby the purest way," which she relied on in deciding to purchase the Products.  During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Ojeda was unaware that the products contained any level of heavy metals, including inorganic arsenic, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Products if that information was fully disclosed.  Plaintiff last purchased the products in January 2021 and would not purchase after she became aware that the Products contained heavy metals.  Plaintiff Ojeda was injured by paying a premium for the Products that have no or de minimis value or whose value was at least less than what she paid for the Products based on the presence of the heavy metals.

3

8.     Defendant Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business currently located at 1111 Marcus Avenue, Lake Success, New York, 11042.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiff and most members of the proposed Class are citizens of a state different from Defendant.

10.     The Court has personal jurisdiction over the Defendant.  The Defendant has transacted business and maintained substantial contact throughout the United States, including in this District.  Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

11.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Specifically, Defendant's decision-making regarding the marketing of the baby foods at issue, including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District.  Furthermore, Defendant is headquartered in this District.

## FACTUAL BACKGROUND

### I.     HAIN CELESTIAL GROUP, INC.

12.     Defendant Hain manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Earth's Best Organic label, stating "we believe every baby deserves an organic start in life."[3]

---

[3]     *Earth's Best,* https://www.earthsbest.com/ (accessed May 25, 2021).

13.    Hain claims on its website, under the subheading "Our Promise," that it has "rigorous product testing to guarantee quality and safety."[4]  It further promises that "we ensure that the ingredients we procure for our products do not use potentially harmful pesticides or fertilizers.  This rigorous quality assurance process allows us to meet the strict standards for organic certification"; that "Earth's Best Organic® infant formulas are produced with milk from cows that are humanely raised and not treated with antibiotics or growth hormones"; that "Earth's Best Organic® infant purees in both jars and pouches are produced from high quality, great tasting organic fruits and vegetables"; and that "The Earth's Best Organic® brand is the first complete line of organic infant nutrition and care products," stating "we strive to provide better-for-baby products that are pure, safe and sustainable."[5]

14.    Hain redoubles these promises by telling parents concerned about recent reports about tainted Earth's Best Organic Baby Foods: "Nothing is more important to Earth's Best than the trust and confidence of parents that our organic products provide safe nutrition for healthy babies.  Our rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines.  In addition, we work collaboratively with the Baby Food Council (composed of other manufacturers, the Environmental Defense Fund and Cornell University), the Food and Drug Administration and the Department of Agriculture to continuously refine and improve upon the standards to ensure our products exceed safety and nutrition standards—including reducing the levels of heavy metals that occur naturally in soil and water."[6]

---

[4]    *Earth's Best, Our Promise,* https://www.earthsbest.com/why-earths-best/our-promise (accessed May 25, 2021).

[5]    *Id.*

[6]    *Earth's Best Parents FAQ,* https://www.earthsbest.com/parents/faq/ *(*accessed May 25, 2021).

15.    Hain produces several types of baby foods under the Earth's Best Organic label, (the "Earth's Best Organic Baby Foods"), including:

- Earth's Best Organic Sensitivity—DHR/ARA Infant Formula with Iron Organic Milk-Based Powder
- 4+ Months (Stage 1) Baby Food Jar—Turkey & Turkey Broth
- 4+ Months (Stage 1) Baby Food Jar—Chicken & Chicken Broth
- 6+ Months (Stage 2) Baby Food Jar—Apples & Apricots
- 6+ Months (Stage 2) Baby Food Jar—Apples & Plums
- 6+ Months (Stage 2) Baby Food Jar—Pears & Mangos
- 6+ Months (Stage 2) Baby Food Jar—Sweet Potato Apricot
- 6+ Months (Stage 2) Baby Food Jar—Vegetable Turkey
- 6+ Months (Stage 2) Baby Food Jar—Sweet Potatoes
- 6+ Months (Stage 2) Baby Food Jar—Peach Oatmeal Banana
- 6+ Months (Stage 2) Baby Food Jar—Banana Mango
- 6+ Months (Stage 2) Baby Food Jar—Apple Butternut Squash
- 6+ Months (Stage 2) Baby Food Jar—Bananas Peaches & Raspberries
- 6+ Months (Stage 2) Baby Food Jar—Apples & Blueberries
- 6+ Months (Stage 2) Baby Food Jar—Corn & Butternut Squash
- 6+ Months (Stage 2) Baby Food Jar—Chicken & Rice
- 6+ Months (Stage 2) Baby Food Jar—Pears & Raspberries
- 6+ Months (Stage 2) Baby Food Jar—Sweet Potato Chicken
- 6+ Months (Stage 2) Baby Food Jar—Winter Squash
- 6+ Months (Stage 2) Baby Food Jar—Pears
- 6+ Months (Stage 2) Baby Food Jar—Bananas Carrots
- 6+ Months (Stage 2) Baby Food Jar—Apples
- 6+ Months (Stage 2) Baby Food Jar—Peas
- 9+ Months (Stage 3) Baby Food Jar—Tender Chicken & Stars
- 9+ Months (Stage 3) Baby Food Jar—Apple Cinnamon Oatmeal
- 6+ Months (Stage 2) Baby Food Pouch—Apple Strawberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Whole Breakfast Sweet Potato Cinnamon
- 6+ Months (Stage 2) Baby Food Pouch—Wholesome Breakfast Blueberry Banana
- 6+ Months (Stage 2) Baby Food Pouch—Peach Mango Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Apple Peach Oatmeal Fruit and Grain Puree
- 6+ Months (Stage 2) Baby Food Pouch—Carrots & Broccoli Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch—Orange Banana Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Butternut Squash Pear Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Whole Breakfast Apple Raisin

- 6+ Months (Stage 2) Baby Food Pouch—Pumpkin & Spinach Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch—Squash & Sweet Peas Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch—Sweet Potato Garbanzo Barley Veggie & Protein Puree
- 6+ Months (Stage 2) Baby Food Pouch—Banana Blueberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Sweet Potato Apple Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Sweet Potato & Beets Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch—Banana Raspberry Brown Rice Fruit and Grain Puree
- 6+ Months (Stage 2) Baby Food Pouch—Banana Blueberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Apple Sweet Potato Pumpkin Blueberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Pasta with Tomato & White Bean
- 6+ Months (Stage 2) Baby Food Pouch—Wholesome Breakfast Banana Apricot Pumpkin with Yogurt Oat & Quinoa Baby Puree
- 6+ Months (Stage 2) Baby Food Pouch—Wholesome Breakfast Strawberry Peach Pear with Yogurt Oat & Quinoa Baby Puree
- 6+ Months (Stage 2) Baby Food Pouch—Spinach Lentil and Brown Rice Veggie & Protein Puree
- 6+ Months (Stage 2) Baby Food Pouch—Butternut Squash Pear Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch—Apple Sweet Potato Pumpkin Blueberry Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch—Pear Carrot Apricot Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch—Pumpkin Cranberry Apple Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch—Pumpkin Cranberry Apple Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch—Cheesy Pasta with Veggies
- 9+ Months (Stage 3) Baby Food Pouch—Turkey Quinoa Apple Sweet Potato
- 9+ Months (Stage 3) Baby Food Pouch—Chicken Pot Pie
- 9+ Months (Stage 3) Baby Food Pouch—Beef Medley
- 9+ Months (Stage 3) Baby Food Pouch—Chicken Casserole

16. Hain used words such as "organic" and "stage" and ages such as "4+", "6+", and "9+", to emphasize the foods' suitability for consumption by young children and infants.

17.     Earth's Best Organic Baby Foods packaging labels do not list, let alone warn, potential customers that the Hain Baby Food Products contain toxic heavy metals.

## II.     HEAVY METAL NEUROTOXINS & THEIR EFFECT ON CHILD DEVELOPMENT

18.     Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children.  This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

19.     One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium.  These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[7]  Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[8]

20.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[9]  Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like

---

[7]     *Neurotoxin*, https://www.britannica.com/science/neurotoxin (accessed May 25, 2021).

[8]     Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed May 25, 2021) (hereinafter "Healthy Babies Bright Futures Report").  Healthy Babies Bright Futures Report, at 13.

[9]     *Id.* at 1.

attention-deficit hyperactivity disorder (ADHD)."[10]   These developmental conditions can be caused by exposure to even trace amounts of these substances.[11]

21.     For these reasons, organizations such as the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[12]   Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[13]

### A.     Arsenic

22.     The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[14]   The effects of arsenic exposure are irreversible and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[15]

23.     Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") to set standards limiting the

---

[10]     Healthy Babies Bright Futures Report, at 6.

[11]     *Id.* at 1.

[12]     Report, at 2.

[13]     *Id.* at 3.

[14]     Healthy Babies Bright Futures Report, at 13.

[15]     Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis*, 454-55 SCI. OF THE TOTAL ENV'T 562-77 (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/).

allowable amount of arsenic in products meant for human consumption.  For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water.  Additionally, the FDA has set a limit of 10 parts per billion for bottled water[16] and is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[17]  The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[18]

### B.      Lead

24.      Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[19]  Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems.  No safe level of exposure has been identified."[20]

25.      For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[21]   Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[22]

---

[16]       Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/ business/2021/02/04/toxic-metals-baby-food/ (accessed May 25, 2021).

[17]       FDA, *Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level* (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments Regulatory Information/UCM493152.pdf (accessed May 25, 2021).

[18]       *See, e.g., Warning Letter from FDA to Valley Processing, Inc.* (June 2, 2016), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-washington-state-juice-processor (accessed May 25, 2021).

[19]       Report, at 11.

[20]       Healthy Babies Bright Futures Report, at 13.

[21]       *Id*.

[22]       Report, at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review,* INT'L J. ENV'T RES. & PUB. HEALTH (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

26.    The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[23] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[24]

### C.    Mercury

27.    The World Health Organization warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[25]

28.    It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing"[26] and that exposure to even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[27]  For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[28]

---

[23]    Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed May 25, 2021).

[24]    *Id.*

[25]    *Id*.

[26]    MISSOURI DEPT. OF NAT. RESOURCES, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/ mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and% 20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fe rtility%20and%20blood%20pressure (accessed May 25, 2021).

[27]    WHO, *Mercury and health* (Mar. 31, 2017), https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C %20skin%20and%20eyes (accessed May 25, 2021).

[28]    MISSOURI DEPT. OF NAT. RESOURCES, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human% 20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20 may,with%20fertility%20and%20blood%20pressure\ (accessed May 25, 2021).

29.     Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[29] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[30]

30.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[31]

**D.     Cadmium**

31.     The heavy metal cadmium is considered a neurotoxin.  Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death.  Eating lower levels of cadmium over a long period can lead to kidney damage, and can cause bones to become fragile and break easily.  Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers.  The US Department of Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[32]

32.     Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[33]

33.     The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[34]

---

[29]     Healthy Babies Bright Futures Report, at 14.

[30]     Report, at 12-3.

[31]     *Id.* at 32.

[32]     NYS DEPT. OF HEALTH, *Cadmium in Children's Jewelry* (Feb. 2011) https://www.health.ny.gov/environmental/ chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry (accessed May 25, 2021).

[33]     Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/ (accessed May 25, 2021).

[34]     Report, at 29.

## SUBSTANTIVE ALLEGATIONS

34.     On November 6, 2019, in response to reports alleging high levels of toxic heavy metals in baby foods, the United States House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy (the "Subcommittee") requested internal documents and test results from several of the United States' largest producers of baby foods, including Defendant Hain.

35.     On February 4, 2020, the Subcommittee published a report entitled "Baby Foods Are Tainted With Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (the "Report") containing the results of the Subcommittee's investigation.

## III.   HAIN KNOWINGLY SOLD BABY FOODS WITH UNSAFE LEVELS OF TOXIC HEAVY METALS TO UNITED STATES CONSUMERS

36.     The Subcommittee's Report contained findings that Hain knowingly sold baby foods to United States consumers that contained high levels of the toxic heavy metal's arsenic, lead, mercury, and cadmium.  By knowingly selling baby foods with unsafe amounts of these toxic heavy metals to United States consumers, Hain knowingly exposed millions of children to substances proven to cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[35]

37.     The Report found that Hain only tested individual ingredients, and not its final product(s).  According to the Subcommittee, this policy "recklessly endangers babies and children and prevents [Hain] from ever knowing the full extent of the danger presented by [Hain's] products."[36]

---

[35]    *Id.* at 2.

[36]    *Id.* at 56-7.

38.     The Report also made specific findings regarding the presence of toxic heavy metals in baby foods produced by Defendant Hain. These findings include the following:

- Hain typically only tested ingredients not finished products, which underrepresents the level of toxic heavy metals.[37]   However, Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic.[38]   Hain used ingredients testing as high as 309 ppb arsenic.[39]   This significantly exceeded even Hain's internal standard.[40]   Half of Hain's brown rice baby food contained over 100 ppb arsenic.[41]
- Hain used ingredients that tested as high as 352 ppb lead; used many ingredients containing over 20 ppb lead, including several which tested over 200 ppb lead.[42]   This significantly exceeded even Hain's internal standard.[43]
- Hain used multiple ingredients that tested over 20 ppb cadmium, including some that tested up to 260 ppb cadmium.[44]
- Hain, unlike several of its competitors, does not even test for mercury in its baby food.[45]

39.     The Report also revealed that on August 1, 2019, Hain gave a non-public presentation to the FDA.  In this presentation, Hain admitted that testing ingredients, rather than final products (which Hain does), "underrepresent[ed]" Toxic Heavy Metal levels in its baby food products.  Indeed, 100% of tested Hain baby food products had "inorganic arsenic levels . . . higher in the finished baby food than the company estimated they would be based on individual ingredient testing," with levels between 28–93% higher in finished products than ingredients.[46]

---

[37]     *Id.* at 5.

[38]     *Id.* at 3.

[39]     *Id.*

[40]     *Id.* at 4.

[41]     *Id.* at 5.

[42]     *Id.* at 3.

[43]     *Id.* at 4.

[44]     *Id.* at 3.

[45]     *Id.* at 4.

[46]     *Id.* at 5.

40.     During this non-public presentation, Hain also admitted that half of its brown rice baby food products contained over 100 ppb of inorganic arsenic, with an average across all brown rice baby food products of 97.62 ppb.[47]  Hain admitted that this was not exclusively caused by naturally occurring toxic heavy metals, but were instead caused by additives regularly used by Hain and other baby food manufactures, such as vitamin and mineral pre-mix.[48]

## IV.    DEFENDANT HAIN FALSELY, MISLEADINGLY, AND/OR DECEPTIVELY CLAIMED ITS FOOD WAS FIT FOR CHILD CONSUMPTION

41.     Baby food manufacturers hold a special position of public trust.  Consumers believe that they would not sell unsafe products.  Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food.  Defendant Hain took advantage of its position.

42.     Hain advertised its products as safe, healthy, nutritious, natural, organic, and safe for consumption.  By doing so, Hain had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained unsafe levels of heavy metals.

43.     Hain violated this duty by marketing and advertising its baby foods through statements regarding the safety of its baby foods despite knowing that its baby foods contained dangerous levels of heavy metals.

44.     As a result of Hain's false, misleading, and deceptive statements, Plaintiff and members of the Class and Subclass bought Earth's Best Organic Baby Foods they would not have otherwise bought, and paid more for Earth's Best Organic Baby Foods than they would have paid

---

[47]     *Id.*

[48]     *Id.*

had it been fully disclosed that Earth's Best Organic Baby Foods contained dangerous levels of heavy metals.

## V.   DEFENDANT HAIN FAILED TO WARN UNITED STATES CONSUMERS THAT ITS BABY FOODS CONTAINED DANGEROUS LEVELS OF HEAVY METALS

45.   Hain knew or should have been aware that a consumer would be feeding its products to children, often making its products the primary source of food for a child.  This leads to repeated exposure of the heavy metals to the child.

46.   Hain thus wrongfully and misleadingly advertised and sold the Earth's Best Organic Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur.  Hain intentionally omitted these facts from its marketing, advertising and labeling in order to induce and mislead reasonable consumers into purchasing Earth's Best Organic Baby Foods.

## **TOLLING AND ESTOPPEL**

## I.   DISCOVERY RULE TOLLING

47.   Plaintiff and the Class and Subclass had no way of knowing about Defendant Hain's conduct with respect to the presence of toxic heavy metals.

48.   Neither Plaintiff nor any other members of the Class or Subclass, through the exercise of reasonable diligence, could have discovered the conduct alleged herein.  Further, Plaintiff and members of the Class and Subclass did not discover and did not know of facts that would have caused a reasonable person to suspect that Hain was engaged in the conduct alleged herein.

49.   For these, reasons, all applicable statutes of limitation have been tolled by discovery rule with respect to claims asserted by Plaintiff, the Class, and the Subclass.

## II.       FRAUDULENT CONCEALMENT TOLLING

50.       By failing to provide notice of the presence of toxic heavy metals in Earth's Best Organic Baby Foods, Defendant Hain concealed its conduct and the existence of the claims asserted herein from Plaintiff and the members of the Class and Subclass.

51.       Upon information and belief, Defendant Hain intended its acts to conceal the facts and claims from Plaintiff and members of the Class and Subclass.  Plaintiff and the members of the Class and Subclass were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant Hain's conduct.  For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or members of the Class or Subclass should be tolled.

## <u>CLASS ACTION ALLEGATIONS</u>

52.       Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

53.       Plaintiff seeks class certification on behalf of a class defined as follows:

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through the present, purchased Hain's Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Class").

54.       Plaintiff Ojeda seeks certification on behalf of a California Subclass:

**THE CALIFORNIA SUBCLASS:** all persons who are or were citizens of the State of California who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "California Subclass").

55.       Plaintiff reserves the right to modify or refine the definitions of the Class or Subclass based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

56.     Excluded from the Class and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiff and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

57.     **Ascertainability**.   The proposed Class and Subclass are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Class and Subclass can be readily identified through records maintained by Defendant Hain.

58.     **Numerosity (Rule 23(a)(1))**.  The Class and Subclass are so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class and Subclass, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased Hain's Earth's Best Organic Baby Foods.

59.     **Commonality (Rule 23(a)(2))**.  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendant owed a duty of care to Plaintiff and the Class;
- whether Defendant knew or should have known that the Earth's Best Organic Baby Foods contained, or may contain, heavy metals;
- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are natural and safe for human infant consumption;

- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are healthy, superior quality, nutritious and safe for consumption;
- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are natural;
- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are appropriate for consumption by various "Stage[s]" of babies;
- whether Defendant wrongfully represented and continues to represent that the manufacturing of the Earth's Best Organic Baby Foods is subjected to rigorous standards, including testing for heavy metals;
- whether Defendant wrongfully failed to disclose that the Earth's Best Organic Baby Foods contained, or may contain, heavy metals;
- whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;
- whether those representations are likely to deceive a reasonable consumer;
- whether a reasonable consumer would consider the presence, or risk of, heavy metals as a material fact in purchasing baby food;
- whether Defendant had knowledge that those representations were false, deceptive, and misleading;
- whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;
- whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, and lead is material to a reasonable consumer;
- whether Defendant's representations and descriptions on the labeling of the Earth's Best Organic Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;
- whether Defendant violated the laws of the State of California;
- whether Defendant breached its express warranties;
- whether Defendant breached its implied warranties;
- whether Defendant engaged in unfair trade practices;
- whether Defendant engaged in false advertising;
- whether Defendant's conduct was negligent per se;
- whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;
- whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and
- whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

60.    **Typicality (Rule 23(a)(3))**.  Plaintiff's claims are typical of the claims of the other

members of the proposed Class and Subclass.  Plaintiff and members of the Class and Subclass

suffered injuries as a result of Defendant Hain's wrongful conduct that is uniform across the Class and Subclass.

61.     **Adequacy (Rule 23(a)(4))**.  Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and Subclass.  Plaintiff has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interest that is antagonistic to those of the Class and Subclass, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass, and they have the resources to do so.  Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class and Subclass.

62.     **Substantial Benefits**.  This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclass is impracticable.  The prosecution of separate actions by individual members of the Class and Subclass would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class and Subclass, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, expense, and promote uniform decision-making.

63.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

64.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclass as a whole.

65.     Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY
**(on behalf of the Nationwide Class or, alternatively, the California Subclass)**

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     Defendant Hain marketed and sold the Earth's Best Organic Baby Foods into the stream of commerce with the intent that the Earth's Best Organic Baby Foods would be purchased by Plaintiff and the Class.

68.     Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that its Earth's Best Organic Baby Foods were and are safe, healthy, and appropriate for infant and child consumption.

69.     Defendant made these express warranties regarding the Earth's Best Organic Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Earth's Best Organic Baby Foods' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Earth's Best Organic Baby Foods.

70.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Earth's Best Organic Baby Foods to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Earth's Best Organic Baby Foods in deciding whether to purchase Defendant's products.

71.     Defendant's Earth's Best Organic Baby Foods do not conform to Defendant's advertisements, warranties, and representations in that they are not safe, healthy, and appropriate for infant and child consumption; and contain, or may contain, levels of various heavy metals.

72.     Defendant therefore breaches the express warranties by placing Earth's Best Organic Baby Food into the stream of commerce and selling them to consumers, when they have dangerous and/or toxic levels of heavy metals, and can cause toxicity and adverse health implication, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant Hain.  These high levels of heavy metals substantially impair the use, value, and safety of Earth's Best Organic Baby Foods.

73.     Defendant Hain was at all times aware, or should have been aware, of the toxic or dangerous levels of heavy metals in Earth's Best Organic Baby Foods.  Defendant Hain was on notice of these concerns with their products, but nowhere on the package labeling or on Defendant Hain's website or other marketing materials did Defendant Hain warn Plaintiff and members of

the Class and Subclass that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

74.     Instead, Defendant Hain concealed the high levels of heavy metals contained in the Earth's Best Organic Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption.  Defendant Hain thus utterly failed to ensure that the material representations it was making to consumers were true.

75.     The toxic and/or dangerous levels of heavy metals at issue in the Earth's Best Organic Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiff and members of the Class.  The levels of heavy metals contained in the Earth's Best Organic Baby Foods were undiscoverable by Plaintiff and members of the Class at the time of purchase of the Earth's Best Organic Baby Foods.

76.     As manufacturers, marketers, advertisers, distributors and sellers of the Earth's Best Organic Baby Foods, Defendant Hain had exclusive knowledge and notice of the fact that the Earth's Best Organic Baby Foods did not conform to the affirmations of fact and promises.

77.     In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiff and members of the Class and Subclass to rely on such representations.

78.     Defendant Hain's affirmations of fact and promises were material, and Plaintiff and members of the Class reasonably relied upon such representations in purchasing the Earth's Best Organic Baby Foods.

79.     All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiff or members of the Class or Subclass.

80.     Affording Defendant Hain an opportunity to cure its breaches of written warranties would be unnecessary and futile here.  Hain was placed on reasonable notice of the levels of heavy metals in its Earth's Best Organic Baby Foods and breach of the warranties based on their scientific research and expertise in the food production industry.  Defendant Hain has had ample opportunity to cure the high level of heavy metals in its Earth's Best Organic Baby Foods to make them safe and healthy for consumption by Plaintiff and members of the Class and their children, but failed to do so.

81.     Defendant Hain has also had notice of their breach through the publication of the Report, and the prior 2019 report issued by Healthy Baby Bright Future.

82.     As a direct and proximate result of Defendant Hain's breaches of express warranty, Plaintiff and members of the Class have been damaged because they did not receive the products as specifically warranted by Hain. Plaintiff and members of the Class did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of Hain's Earth's Best Organic Baby Foods.

83.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (on behalf of the Nationwide Class or, alternatively, the California Subclass)

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

86.     There was a sale of goods from Defendant to Plaintiff and the Class.

87.     At all times mentioned herein, Defendant manufactured or supplied Earth's Best Organic Baby Foods, and prior to the time the Earth's Best Organic Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Earth's Best Organic Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Earth's Best Organic Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption.  Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Earth's Best Organic Baby Foods.

88.     Contrary to these representations and warranties, the Earth's Best Organic Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

89.     Defendant breached its implied warranties by selling Earth's Best Organic Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

90.     Defendant was on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Earth's Best Organic Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

91.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that Hain's Earth's Best

Organic Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

92.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Hain Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and/or unnatural or other ingredients.

93.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

### THIRD CLAIM FOR RELIEF

**FRAUDULENT MISREPRESENTATION**
**(on behalf of the Nationwide Class or, alternatively, the California Subclass)**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     Defendant falsely represented to Plaintiff and the Class that Hain's Earth's Best Organic Baby Foods are natural, "organic", and safe for consumption by infants and young children.

96.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Earth's Best Organic Baby Foods.

97.     Defendant knew that its representations about Earth's Best Organic Baby Foods were false in that Earth's Best Organic Baby Foods contained, or were at risk of containing, levels of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.  Defendant allowed its packaging, labels, advertisements,

promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

98.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased Earth's Best Organic Baby Foods to their detriment.  Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted Earth's Best Organic Baby Foods, Plaintiff and the Class' reliance on Defendant's misrepresentations was justifiable.

99.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Earth's Best Organic Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

100.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION
**(on behalf of Nationwide Class or, alternatively, the California Subclass)**

101.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.    Defendant concealed from and failed to disclose to Plaintiff and the Class that Earth's Best Organic Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

103.    Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, and suitability of the Earth's Best Organic Baby Foods because: (1)

Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of Earth's Best Organic Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that Earth's Best Organic Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Earth's Best Organic Baby Foods.

104.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Earth's Best Organic Baby Foods.

105.    Plaintiff and the Class justifiably relied on the Defendant's omissions to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of Earth's Best Organic Baby Foods, which is inferior when compared to how Earth's Best Organic Baby Foods are advertised and represented by Defendant.

106.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Earth's Best Organic Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

107.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### FIFTH CLAIM FOR RELIEF

**NEGLIGENT MISREPRESENTATION**
**(on behalf of the Nationwide Class or, alternatively, the California Subclass)**

108.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109.    Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Earth's Best Organic Baby Foods.

110.    Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Earth's Best Organic Baby Foods from the marketplace or to take other appropriate remedial action.

111.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Earth's Best Organic Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant.  Specifically, Defendant knew or should have known that: (1) the Earth's Best Organic Baby Foods were not nutritious, superior quality, pure, natural, healthy, and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (2) the Earth's Best Organic Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (3) the Earth's Best Organic Baby Foods were otherwise not as warranted and represented by Defendant.

112.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Earth's Best Organic Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known

they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

113.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**SIXTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**
**(on behalf of the Nationwide Class or, alternatively, the California Subclass)**

114.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

115.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of Earth's Best Organic Baby Foods.  Defendant knowingly and willingly accepted and enjoyed these benefits.

116.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Earth's Best Organic Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant.  As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

117.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

118.    Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

119.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. Prof. Code §17200 ("UCL")**
**(Brought on Behalf of Plaintiff Ojeda and the California Subclass)**

120.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

121.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

122.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

123.    **Unlawful**: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

      a.     The False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq.;
      b.     The Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq.

124.    **Unfair**: Defendant's conduct with respect to the labeling, advertising, and sale of Earth's Best Organic Baby Foods was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

125.    Defendant's conduct with respect to the labeling, advertising, and sale of the Earth's Best Organic Baby Foods was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

126. Defendant's conduct with respect to the labeling, advertising, and sale of the Earth's Best Organic Baby Foods was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

127. **Fraudulent**: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

128. As set forth herein, Defendant's claims relating the ingredients stated on the Earth's Best Organic Baby Foods' labeling and Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, are false, and/or likely to mislead or deceive the public.

129. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised and packaged Earth's Best Organic Baby Foods to unwary consumers.

130. Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Earth's Best Organic Baby Foods' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

131. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and Class members. Plaintiff and Class members have suffered injury-in-fact as a result of Defendant's unlawful conduct.

132. In accordance with Cal. Bus. & Prof. Code §17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

133.     Plaintiff and Class members also seek an order for and restitution of all monies from the sale of the Earth's Best Organic Baby Foods, which were unjustly acquired through acts in violation of the UCL.

### EIGHTH CLAIM FOR RELIEF

**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. Prof. Code §17500 ("FAL")**
**(Brought on Behalf of Plaintiff Ojeda and the California Subclass)**

134.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

135.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement which is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

136.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  *Id*.

137.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to Earth's Best Organic Baby Foods misled consumers acting reasonably as to Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as stated above.

138.     Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because she purchased Earth's Best Organic Baby Foods in reliance on Defendant's false and misleading labeling claims concerning Earth's Best Organic Baby Foods, among other things, quality, ingredient supply, and product manufacturing and oversight, as stated above.

139.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised Earth's Best Organic Baby Foods in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

140.    Defendant profited from the sale of the falsely and deceptively advertised Earth's Best Organic Baby Foods to unwary consumers.

141.    As a result, Plaintiff, California Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

142.    Pursuant to Cal. Bus. & Prof. Code §17535, Plaintiff, on behalf of members of the California class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class and Subclass, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Earth's Best Organic Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.    An order enjoining Defendant from selling the Earth's Best Organic Baby Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.     An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.     An order requiring Defendant to engage in testing of its finished products to measure the levels of heavy metals; and

F.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury for all issues so triable.

Dated: May 26, 2021                          Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ *Joseph P. Guglielmo*
Joseph P. Guglielmo
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

*Attorney for Plaintiff*

**HAEGGQUIST & ECK, LLP**
Amber L. Eck (SBN 177882) (*pro hac vice*
forthcoming)
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-800
Facsimile: (619 342-7878
ambere@haelaw.com

*Attorney for Plaintiff*